In the Matter of the Application of NEW YORK STATE EMPLOYEES' RETIREMENT SYSTEM and Another, Petitioners, for a Peremptory Order of Mandamus against the BOARD OF SUPERVISORS OF THE COUNTY OF TIOGA, Respondent.

Supreme Court, Tioga County, September 13, 1935.

*John J. Bennett, Jr., Attorney-General* [*John F. Tucker* of counsel], for the petitioners.

*Stephen M. Lounsberry,* for the board of supervisors.

PERSONIUS, J.  By chapter 741 of the Laws of 1920, article 4 of the Civil Service Law was enacted, establishing a " retirement system," having the powers and privileges of a corporation, to be known as " New York State Employees' Retirement System." Section 52 provided for membership in said system.  By article 5, added in 1922, provision was made for the inclusion of certain municipal officers and employees in said system.  Section 75 provided in part: " Provided that the officers and employees of any county shall not be included in the State Employees' Retirement System without the approval of the board of supervisors of any such county  *  *  *.  Should the board of supervisors of a county  *  *  *  give its approval to the participation of the officers and employees of any such county  *  *  *  such employees shall be eligible to participation."

The petition alleges that on or about the 15th day of December, 1930, the board of supervisors of the county of Tioga, herein called the " board," adopted a resolution approving the inclusion of its

officers and employees in said retirement system; that thereafter certain of its officers and employees became members; that on December 14, 1932, the State Comptroller certified to the treasurer of said county the amount payable by it to June 30, 1932; that about January 15, 1934, the Comptroller certified to said treasurer the amount payable by said county to June 30, 1933; that the board has refused to pay said amounts and refused to include the same in the county budget.

The allegations of the petition are not denied, but the opposing affidavits allege that on March 2, 1931, the board adopted a resolution rescinding the resolution of inclusion. An unauthenticated copy of the various resolutions adopted by the board is presented. The resolution of rescission read:

" *Be it resolved*, that the resolution heretofore adopted by this Board of Supervisors on the 15th day of December, 1930, whereby the County of Tioga became a member of the Employees' Retirement System, be, and the same is hereby, rescinded."

The board has since taken the position that the county is not a member of the retirement system. It has refused to pay its contribution. Its member of Assembly has twice been requested to introduce an act permitting it to withdraw from said system. It takes the position that it was induced to adopt the resolution of inclusion by misstatements and misrepresentations made by a representative of the State Comptroller's office. Two questions arise: (1) Having approved the inclusion of its officers and employees in such system, had the board any power to rescind, revoke or repeal its action, and (2) if they did not ordinarily have such power, does the fact, if it be a fact, that the supervisors were induced to adopt the resolution of inclusion by misrepresentations, give them such power?

The defendants' affidavits allege that a special meeting of the board on December 8, 1930, was attended by one McQuirk, a representative of the Comptroller's office, for the purpose of presenting the retirement system; that said McQuirk stated that the assessment of members would approximate seven per cent of their salary; that the county would pay not over the amount paid by the members, and that the cost to the county would gradually diminish; that said McQuirk also stated that only civil service employees were compelled to become members, it being optional with other employees, and, after making inquiry as to the county's payroll, stated that the cost to the county would be about $1,400 the first year, giving all employees the right to become members with full credit for past services; that said McQuirk later admitted that he might have made statements which were erroneous. The

defendants further allege that in truth and in fact employees other than civil service were required to join the system, and that the expense to the county proved to be much more than stated. The amount of the county's contribution to June 30, 1932, was $5,110.69, and for the following year $4,853.63. This is made up of " deficiency contribution " and " normal contribution." The latter for the first year was nearly $1,800, and for the second year nearly $1,600.

Had the board the power to rescind its action? The county is a municipal corporation. (County Law, § 3.) A municipal corporation has no power except such as is given to it by the Legislature. Any power thus given may be modified, diminished or recalled. (*Matter of McAneny* v. *Board of Estimate, etc.*, 232 N. Y. 377, 390.)

It is evident that the State by appropriate legislation attempted to create a retirement system for its officers and employees and those of such counties and municipalities as by appropriate action approved of the inclusion of its officers and employees. Clearly the Legislature intended this system to be permanent. It gave counties, cities, villages and towns the right of election to come in. It is significant that it gave them no power to withdraw. The apparent purpose being to create a permanent retirement system, the power to withdraw cannot be implied. If it is, a municipality may repeatedly elect to come in or withdraw. The parties have called our attention to no applicable authorities, but a consideration of the statute and the authorities found leads us to the conclusion that the defendant county having adopted the resolution of inclusion had no power to rescind it. (*People ex rel. Hovey* v. *Ames*, 19 How. Pr. 551, cited with approval in *People ex rel. Hotchkiss* v. *Supervisors*, 65 N. Y. 222, 228; *Simpson* v. *State ex rel. Eisler*, 179 Ind. 196; 99 N. E. 980; *Jackson* v. *Shlomberg*, 70 Miss. 47; 11 So. 721; *Board of Trustees* v. *Board of Supervisors of Orange County*, 99 Cal. 571; 34 P. 244; *Board of Supervisors* v. *Bowen*, 4 Lans. 24, 30; 2 McQuillin Mun. Corp. [2d ed.] § 871, pp. 839, 840; 15 C. J. 470, § 123.) In *Jackson* v. *Shlomberg* (*supra*) the State adopted a code and provided that a municipality by resolution might elect not to come under. The city of Jackson took affirmative action and elected to come under. Later it adopted an ordinance rescinding its action. The court said (p. 53): " Manifestly, the legislative desire was to bring all municipalities under the operation of the code chapter, but it was not willing to enforce this wish against the will of the municipality, and so shaped the law as to place it in the power of each to reject * * *. This right to reject carries with it the right to accept, and when the corporate authorities, which might irrevocably come under the chapter by non-action, accept the chapter, *there is concurrence*

*of the will of the legislature and the municipality, and the status of the latter is fixed."* (Italics ours.)

The defendants cite authorities to the effect that a party to a contract induced by false though innocent representations may rescind. (*Seneca Wire & Mfg. Co.* v. *Leach & Co.,* 247 N. Y. 1.) But the relation between the State and the county here was not created by contract. It was created by legislation. The State Legislature created the retirement system. Each county was permitted to say whether it would participate. When it elected to do so, the legislation became effective as to it. True, certain obligations grew out of its election but these obligations were not contractual. They were in the nature of an assessment or tax. The county is compelled to pay its share by virtue of the legislative act, the same as it is compelled to pay its share of the other expenses of the State.

Passing the petitioners' argument that neither the State (59 C. J. 194, § 337; *Litchfield* v. *Bond,* 186 N. Y. 66, 82; *McBride* v. *State,* 110 Misc. 64, 71; *Herman* v. *Board of Education,* 234 N. Y. 196), nor an agency of the State (*Dietrich* v. *Palisades, etc., Commission,* 114 Misc. 425), is bound by the misrepresentations of its representatives, and assuming that the board could rescind if its adoption of the resolution of inclusion was induced by misrepresentations of fact, are any such misrepresentations alleged in the defendants' affidavits? Mr. McQuirk's estimate of the normal contribution was not substantially excessive. The statute provided what membership in the system was compulsory and what the county would be required to pay as its normal contribution and as its deficiency contribution in the event that an employee elected to take prior service credit and paid therefor. (Civil Service Law, §§ 52, 53, 76 and 78.) In short the law on which the county's contributions were computed was stated in the statute. The facts on which the contribution was based, so far as then known, were in the possession of the board. It knew its payroll; no one could know what employee or officer would elect to take credit for prior service. We do not think the alleged misrepresentations were such as to justify rescission. (*Levin* v. *Sweet,* 147 App. Div. 894; *Mackmull* v. *Brandlein,* 152 id. 733; *Bernhan C. & M. Corp.* v. *Ship-A-Hoy, Inc.,* 200 id. 399, 409.)

We must assume the truth of the allegations of the defendants' opposing affidavits. (10 Carmody N. Y. Pr. 749, § 698.) Even so, we think the petitioners are entitled to the relief asked. A peremptory mandamus is the proper remedy. (*People ex rel. Carlisle* v. *Board of Supervisors,* 217 N. Y. 424; *People ex rel. Brewster* v. *Board, etc.,* 219 id. 582.)

Submit order accordingly.