[No. 9701.   Department One.—July 30, 1885.]

## WM. A. SCOLLAY, Appellant, v. THE COUNTY OF BUTTE, Respondent.

MUNICIPAL CORPORATIONS—COUNTIES—POWERS INVOLVING EXERCISE OF JUDGMENT CANNOT BE DELEGATED.—Powers conferred upon a municipal corporation, involving the exercise of judgment and discretion, are in the nature of public trusts, and cannot be delegated to others.

ID.—BOARD OF SUPERVISORS—CONTRACT FOR COLLECTION OF DEBT DUE COUNTY—DELEGATION OF POWER TO CONDUCT LITIGATION.—The board of supervisors of a county has power to contract for the collection of a debt due the county; but in the exercise of that power it has no authority to delegate to others, whom it employs for that purpose, the power to determine whether to commence a suit in the name of the county, and to retain attorneys to manage the prosecution thereof, nor to abdicate its control of such a suit, or make its compromise or settlement dependent upon the consent of strangers.

APPEAL from a judgment of the Superior Court of Butte County.

The facts are stated in the opinion of the court:

*Wm. M. Pierson*, and *H. C. Newhall*, for Appellant.

The board of supervisors had power to enter into the contract in question. Such contract is not *ultra vires.* (Pol. Code, §§ 4000, 4003, 4046; 1 Dillon on Municipal Corp. § 89; *Smith* v. *Sacramento,* 13 Cal. 531; *Hornblower* v. *Duden,* 35 Cal. 664; *Colusa County* v. *De Jarnett,* 55 Cal. 373; *Beals* v. *Evans,* 10 Cal. 459.) The contract being executed, the defendant having received its benefit, is estopped to deny its validity. (Dillon on Muncipal Corp. §§ 457, 935, 936; *Meyer* v. *Brown,* 65 Cal. 583; *Green Bay R. R. Co.* v. *Union I. Co.* 107 U. S. 98; *Hitchcock* v. *Galveston,* 96 U. S. 351; *Moore* v. *Mayor of N. Y.* 73 N. Y. 245; *Oneida Bank* v. *Ontario Bank,* 21 N. Y. 490; *Argenti* v. *San Francisco,* 16 Cal. 264; *Pimental* v. *San Francisco,* 21 Cal. 361; *Pixley* v. *W. P. R. R. Co.* 33 Cal. 183; *Miners' Ditch Co.* v. *Zellerbach,* 37 Cal. 542; *Bradley* v. *Ballard,* 65 Ill. 414; *State Board* v. *Citizens Street Ry. Co.* 47 Ind. 407; *Hays* v. *Galion Gas Light etc. Co.* 29 Ohio St. 330; *Railway Co.* v. *McCarthy,* 96 U. S. 258; *Perkins* v. *Portland R. R. Co.* 47 Me. 573; *Rutland R. Co.* v. *Proctor,* 29 Vt. 93; *Oil Creek R. R. Co.* v. *Penn. T. Co.* 83 Pa. St. 160; *Darst* v. *Gale,* 83 Ill. 136; *Thompson* v. *Lambert,* 44 Iowa, 239.)

*I. S. Belcher, John C. Gray, Chas. F. Lott, L. C. Granger,* and *A. F. Jones,* for Respondent.

The board of supervisors had no power to make the contract, or to bind the county by its performance. (Pol. Code, §§ 4003, 4046; Cooley on Const. Lim. 233; Potter on Corp. § 544; Dillon on Municipal Corp. §§ 10, 457; *City of Eufaula* v. *McNab,* 67 Ala. 588; *Branham* v. *San Jose,* 24 Cal. 585; *Donovan* v. *Mayor of N. Y.* 33 N. Y. 293; *McDonald* v. *Mayor of N. Y.* 68 N. Y. 23; *Halstead* v. *Mayor of N. Y.* 3 N. Y. 430; *School Directors* v. *Fogleman,* 76 Ill. 189; *Tower of South Ottawa* v. *Perkins,* 94 U. S. 261; *McCoy* v. *Briant,* 53 Cal. 247; *Minturn* v. *Larue,* 23 How. 436; *Linden* v. *Case,* 46 Cal. 174; *McCracken* v. *San Francisco,* 16 Cal. 619.) All persons contracting with a muncipal corporation are bound to inquire into the power of the corporation or its officers to make the contract; and whenever the contract is *ultra vires,* the corporation may plead its invalidity as a defense to an action founded

thereon. The doctrine of estoppel has no application to such a case. (Dillon on Municipal Corp. § 457; *Donovan* v. *Mayor, etc.* 33 N. Y. 293; *McDonald* v. *Mayor, etc.* 68 N. Y. 23; *Halsted* v. *Mayor etc.* 3 N. Y. 430; *School Directors* v. *Fogleman,* 70 Ill. 189; *South Ottawa* v. *Perkins,* 94 U. S. 261; *State* v. *Kirkley,* 29 Md. 85; *McCoy* v. *Briant,* 53 Cal. 247; *Martin* v. *Zellerbach,* 38 Cal. 300; *Marsh* v. *Fulton Co.* 10 Wall. 676; *Austin* v. *Coggeshall,* 12 R. I. 329; *Hodges* v. *Buffalo,* 2 Denio, 110; *Phelan* v. *San Francisco,* 6 Cal. 531; *San Diego W. Co.* v. *San Diego,* 59 Cal. 517; *Los Angeles Gas Co.* v. *Toberman,* 61 Cal. 199; *Mayor* v. *Ray,* 19 Wall. 469.)

McKEE, J.— In the year 1876, Butte County was the owner and holder of two hundred railroad bonds of the California Northern Railroad Company, secured by mortgage, the principal and interest of which had become due and payable; but the company would not pay, and the county was desirous of collecting them. Under those circumstances two persons, W. S. Watson, and William Corcoran, proposed to the board of supervisors of the county that they would collect them without attorney's fees, expenses, or costs to the county, for fifty cents on the dollar. The board accepted the proposal, and on the 3d of October, 1876, a written contract to that effect was drawn and signed by the chairman of the board in the name of the county, and by Watson and Corcoran; and the contract thus signed was ratified by the board.

By the terms of the contract the bonds were to be delivered to Watson and Corcoran for collection; they were to commence within sixty days, "proceedings," or "negotiations," or "a proper suit," for their collection and "prosecute the matter without any unnecessary delay," without costs or charges, or attorney's fees, and when collected retain to their own use fifty per cent of the amount collected "in full payment of themselves, their agents, attorneys, and employees employed or engaged in the matter." It was also "mutually understood and agreed that either of the parties hereto may compromise the matter of paying said bonds with said railroad company, upon such terms and conditions as they may deem just and equitable, but no compromise so made shall be final or binding without the express written consent of the parties hereto."

On the 2d of December, 1876, foreclosure proceedings upon the bonds and mortgage were commenced against the railroad company.. These were continued for about seven years without other result than the recovery of a final judgment for the principal and interest due upon the bonds; but for the execution of this judgment, so far as appears from the complaint, no steps were taken; and under these circumstances the board of supervisors of the county on the 15th of May, 1883, compromised and settled with the railroad company without the consent, written or otherwise, of Watson and Corcoran, and received from the company $20,000, which it accepted in full satisfaction of the bonds and release of the mortgage. It is alleged that " when this settlement was made there was due and payable on said bonds the sum of $47,058.80, which could and would have been collected and received by the county but for the unauthorized compromise and settlement by the board." Five months after this settlement Watson and Corcoran assigned the contract to the plaintiff and appellant, who presented a claim to the board of supervisors for $23,329.40, due upon said contract. The claim was rejected and hence this suit. The answer of the county to the complaint is that the contract was *ultra vires*.

When the contract was made the powers of the several counties of the State as defined by the legislature were contained in the following sections of the Political Code:—

" Section 4000. Every county is a body politic and corporate, and as such has the powers specified in this Code, or in special statutes, and such powers as are necessarily implied from those expressed.

" Section 4001. Its powers can only be exercised by the board of supervisors, or by agents and officers acting under their authority, or authority of law.

" Section 4003. It has power:—

" 1. To sue and be sued.

" 3. To make such contracts and purchase and hold such personal property as may be necessary to the exercise of its powers.

" 4. To make such orders for the disposition or use of property as the interests of its inhabitants require."

And the board of supervisors as agents of the county were clothed with the following jurisdictions and powers:—

"Section 4046.   The boards of supervisors in their respective counties have jurisdiction and power under such limitations and restrictions as are prescribed by law: —

"8.  To purchase, receive by donation, or lease, any real or personal property, necessary for the use of the county, preserve, take care of, manage and control the same.

"10.  To sell at public auction at the court house door after thirty days' previous notice . . . . to the highest bidder for cash, any property, real or personal, belonging to the county.

"15.  To direct and control the prosecution and defense of all suits to which the county is a party.

"26.  To do and perform all other acts and things required by law, not in this title enumerated, or which may be necessary to the full discharge of the duties of the chief executive authority of the county government," etc., etc.

These provisions constituted the charter of the county upon the subjects to which they relate; and for the declared purposes and objects within its jurisdiction, the board could exercise the powers expressly granted to it and those which were necessarily or fairly implied in or incident to them.

Railroad bonds belonging to a county are property upon which the county may sue, and about which the board of supervisors may make such orders as it may deem best for the interests of the county, with reference to the use or disposition of the same, in the mode prescribed for the exercise of its powers.   No orders were made for the sale of the bonds in the mode prescribed by subdivision 10 of section 4046, *supra.*   The contract was for their collection by negotiations or other proceedings, or by suit.   No question is made as to the power of the county to sue.   Such a power implies the power to employ an agent to commence and prosecute a suit, unless the law itself has provided for the county a law officer whose duty it is to commence and prosecute suits for the county.   Such an officer has been provided in the district attorney, whose duty it is, as the legal adviser of the county . . . . "to defend all suits brought against . . . . his county, and prosecute . . . . all actions for the recovery of debts, fines, penalties, and forfeitures accruing to . . . . his county"; and to collect and receipt for the same in his official capacity.   (Subd. 3, 4, § 4256, Pol. Code.)

In *Hornblower* v. *Duden*, 35 Cal. 660, it was held, upon the authority of *Smith* v. *The Mayor of Sacramento*, 13 Cal. 533, that while the power to employ other counsel than the district attorney to commence and prosecute suits for the county was not expressly conferred on the board of supervisors, it was obviously embraced in the general power to do and perform all such other acts and things as may be strictly necessary to the full discharge of the powers and jurisdiction conferred on the board, and in the power to control the prosecution and defense of all suits to which the county is a party.

Accepting that as a correct rendition of the powers conferred on the board of supervisors in respect to the prosecution and defense of suits to which the county may be a party, the contract under consideration is not of that character.   The plaintiff does not allege that his assignors were attorneys or counselors at law, or that they, or the board of supervisors, contracted for legal services to be rendered by them in connection with or independent of the district attorney.   The subject-matter of the action was the collection of *choses in action* which belonged to the county. Without obtaining any order or instructions from the board to sue, the contracting parties agreed "to commence a proper suit, or proceeding, or negotiation, for the collection of the amount due upon said bonds, within sixty days from date, and to faithfully and diligently prosecute the same until a final judgment or settlement, without any cost or charge to the county; . . . . and to accept in full for all services to be rendered by them, or attorneys *they may employ in the matter*, the sum of fifty per cent upon each and every dollar so collected by them of the amounts due upon said bonds," etc.

It may be conceded that the board of supervisors had power to contract for the collection of the property of the county; but in the exercise of that power it had no authority to delegate to others, whom it employed for that purpose, the power to determine whether to commence a suit in the name of the county, and to select and employ attorneys to commence and prosecute such a suit; nor to abdicate its control of the prosecution of such a suit, or to make its compromise or settlement dependent upon the written consent of strangers.   The commencement of a lawsuit, the selection and employment of attorneys to commence and

prosecute it, and the compromise and settlement of the same are acts which involve the exercise of judgment and discretion; and it is well settled that powers conferred upon a municipal corporation to do such acts cannot be delegated to others. Such powers are in the nature of public trusts conferred upon the corporation for the public benefit, and cannot be vicariously exercised. (Cooley's Const. Lim. 204.) Hence the contract in suit was *ultra vires;* and the court below properly sustained the demurrer.

Judgment affirmed.

ROSS, J., and McKINISTRY, J., concurred.

Hearing in Bank denied.